APPEARANCES:
Representing the Plaintiff:
 O'CONNELL, FLAHERTY ATTMORE, LLC Attorneys at law 10 Columbus Boulevard Hartford, Connecticut 06106 BY: STEPHEN J. SINATRO, ESQUIRE -and- JAMES T. FLAHERTY, ESQUIRE
Representing the Defendant Edward Caputo:
 KLEINMAN ASSOCIATES, P.C. Attorneys at Law 22 Masonic Street New London, Connecticut 06320 BY: MEREDITH E. RUSSELL, ESQUIRE
 Laura Muenchow, Certified Court Reporter
 THE COURT: All right, we have the one remaining matter that deals with the piece for — well, actually attorney's and expert fees, all right, and have had a chance to go through your memos and the reply memo. Why don't you — and will you identify yourselves for the record.
MR. SINATRO: I will, Your Honor.
 THE COURT: Have you identified the case for the record?
THE REPORTER: No.
 THE COURT: All right, would you identify the case for the record.
CT Page 5160
 MR. SINATRO: This is Upper Folly Farm Conservancy, Inc. verses Edward Caputo, et al, docket number CV97-0576088S. For the record, my name is Steve Sinatro for Upper Folley Farm Conservancy, Inc.
 MS. RUSSELL: And for the record, I'm Meredith Russell for the defendant Edward Caputo.
THE COURT: All right.
MR. SINATRO: May I, Your Honor?
THE COURT: You may address your motion.
 MR. SINATRO: Thank you, Your Honor. I'm going to do my best not to just repeat what's in the briefs because I know you read them.
 THE COURT: And as I said, I have reviewed both — all three of the filings.
 MR. SINATRO: Okay. The first point that I wanted to make was that there are some claims that the stipulation doesn't — that there were no findings with regard to any of the merits, of the complaint and the application. Before I get into the legal basis for the attorney's fees I just wanted to address that.
 We have a stipulation entitled Stipulated Order For Judgment which I understand even though I don't have a signed copy from Jim Flaherty was signed by the Court and the parties. I would simply say on that point the documents by which this Court got jurisdiction over this case are the complaint and the application for injunction, so this had to be a stipulation as to something, and it's our position that it was a stipulation as to the allegations in the conferring documents.
 I'll also point out that in the stipulation itself there are acknowledgements that there were damages done by Mr. Caputo. That's important for this reason: The claim for attorney's fees is based on 7.5 and 19.2A and E, and they essentially say — CT Page 5161 and I won't read them unless the Court would like me to. They're in the documents.
 They essentially say that the condo association has the ability to assess damages against a unit owner for the purpose of them maintaining the units and the common elements, et cetera, et cetera. 2.6 defines the definitions, and that wasn't included in our brief.
 2.6 has the definitions in it, and they're defined for — there's a bunch of different ways, but for our purposes as expenses of administration, maintenance, repair or replacement of common elements in the units, so in this case the expenses for maintaining these things and bringing the action against Mr. Caputo were the attorney's fees and the expert fees. 7.5 allows them to be assessed. 19.2A and E also allows them to be assessed against individual unit owners when they can be traced to that person.
 The defendant makes the point that Well, that really talks about assessing liens and what we really know — what we really think of as common, you know, condominium assessments and liens for that purpose. We will concede that we're probably jumping ahead one step when we go under section 19.2, but for practical reasons it doesn't make much sense to have the board go back, assess these same damages against Mr. Caputo at a hearing.
 They'll listen to his arguments. In all likelihood since the same people are the ones requesting that we get attorney's fees here they will assess them, and then we'll be back in court either foreclosing the lien or he'll just pay them. I'm not sure how he would deal with that, but to concede a point we're probably jumping ahead one step under that section. I think 7.5 gives us the authority to do it here today.
 What I wanted to point out to the Court as well is if there's any doubt about whether these sections allow us to do this, what we really need to do is CT Page 5162 look at the purpose of these bylaws and declarations, and those are — those really take into account the fact that this thing is not run for profit. They have no budget for these types of expenses, and this is really the purpose of them.
 They dealt with Mr. Caputo for months trying to get him — trying to avoid this whole problem. We couldn't. They had to go to court and do what we did to get these — to get the injunctive relief and to preserve the common elements, and there was an expense to it, and the expense was the witness fees and the attorney's fees.
 You know, there is a basis in the declaration. He was aware of it. We tried to avoid it, but we had to incur the expense to preserve what — you know, the purpose of this association, and that's why we feel that they should be assessed.
THE COURT: Counselor.
 MS. RUSSELL: Your Honor, I think my brief makes it very clear that had this case been pled appropriately or had the stipulation been drafted differently the types of expenses covered in 7.5 of the declaration to which the plaintiff refers and in 19.2 of the declaration to which the plaintiff refers would have been appropriately bases upon which to assess these fees or rather those two sections of the declaration if pled appropriately would have afforded a basis under 19.3.
19.3 is a very specific —
 THE COURT: When you say if pled appropriately what do you mean?
 MS. RUSSELL: There was no allegation in the complaint —
THE COURT: Right.
 MS. RUSSELL: — to which this stipulation — from which this stipulation follows that there were CT Page 5163 damages of X dollars and that there were appropriate assessments for those damages and that this is an attempt to collect.
 The stipulation itself is not an acknowledgement of any wrongdoing by my client as I pointed out in my brief. It simply is an agreement that he will not do certain things and he will do certain other things. That is not in and of itself an acknowledgement that he has done anything wrong.
 The plaintiff asked for relief both in the amended complaint and in his — in its motion for award of fee pursuant to 19.3. 19.3 does afford the ward of attorney's fees and costs but only in connection with an action brought to collect or to foreclose upon properly assessed common charges and common expenses.
 Clearly damage done to other unit owners or damage done to common areas of the association or other litigation which resulted in the association incurring fees would under the definitions in the declaration have been common expenses that could be recoverable but only in the context of an action to collect or foreclose properly assessed common charges and common expenses that then were not paid by a defendant.
 So, the plaintiff cannot rely on 19.3 of the declaration as a basis for giving this — for asking this Court to award fees. This Court lacks the authority to do that under the terms of the declaration.
 THE COURT: What in the declaration do you see is the area that they could claim if you see it at all?
MS. RUSSELL: I don't see it at all.
 THE COURT: Well, that was I thought the gist of your argument, that you see nowhere, in the declaration.
MS. RUSSELL: In the declaration as this case CT Page 5164 has been framed to the Court.
 THE COURT: When you say as it's framed, now how should it have been framed?
MS. RUSSELL: I think —
 THE COURT: Under your thinking it probably could not have been framed
 MS: RUSSELL: I think counsel is quite correct in one respect, that only if you get to the end and then you start all over in an action to foreclose or to collect would 19.3 afford a basis.
 THE COURT: So, what you're saying is the association would have to have brought this action, had it concluded in its favor, determined on the —
MS. RUSSELL: Possibly.
THE COURT: So, you would have two sets.
MS. RUSSELL: Possibly, but I think —
 THE COURT: First to join the action that was agreed. The stipulation makes it very clear that the areas that were identified were problem areas, and there was agreement to do and not to do certain things so that there would be a conformity with the plan for that development, the plan for that development.
 Now, if you're saying there is nowhere in the declaration where unit owners through their association as new dwellings are added could not have a vehicle for enforcing the limitations or the configurations or whatever is looked to by way of a new addition to the complex, if they have no way of enforcing that, then what you're saying is anyone could come in, build to his own taste —
MS. RUSSELL: No, Your Honor.
THE COURT: — never mind the limitations placed CT Page 5165 on them, but then if you say no, they can't do that but in fact they start doing that, then you would have the association without a remedy because at that point you don't have a unit owner in place who is not paying fees. You don't have a unit owner in place who is going beyond the common areas that are existing.
 In fact, in this building activity there was an infringement on, I think that's what the stipulation recognizes, that the way he was putting this up got in the way of those specifications that the development felt it could enforce when someone came in and wanted to build.
 Now, the argument is, and that's not an issue, efforts were made prior to bringing the action to get conformity. It didn't work, so they had to bring the action. Bringing the action involves attorney fees. Bringing the action involves the use of expert's to be able to support the burden of proof that they must carry when they come to court.
 These are all expenses that are tied in with the need that the association is put to because it has a responsibility to its members to see that any new activity that comes into that complex conforms, but you're saying there is nothing in the declaration that gives them a basis having done that and having pled this case in the only way it can be pled because they are talking about building which is not in conformity with specifications that the development lays on a person coming in.
 They pled that. If they had not pled that correctly, there would have been no stipulation because you would have had a basis for moving to get rid of that. The stipulation was entered into and addresses those things that happened, will be remedied, have not been done, have been done.
 Now we have the matter of how do we make the association whole for having had to do this, and your argument that it has no way of recouping its expenses really flies in the face of —
MS. RUSSELL: If I might — CT Page 5166
THE COURT: — the declaration.
 MS. RUSSELL: If I might finish my argument, Your Honor.
 THE COURT: I didn't realize I had to cut you short. I'm sorry. Go ahead. I'm giving you other things to think about that you might address.
 MS. RUSSELL: No, I'm trying to put it in the most coherent context.
THE COURT: All right.
 MS. RUSSELL: There's no question that the declaration affords the association the authority to enforce its rules and regulations, and that is not my position. My position is not that the declaration does not afford the conservancy the ability to enforce its regulations. Clearly the declaration does give the conservancy that authority, but the declaration in the sections recited by counsel in its brief and argument today does not afford recovery of fees in this context.
 Had counsel pled — framed its prayer for relief differently both in the pleadings that were filed with the Court and in the stipulation which was filed with the Court and entered as an order a couple of weeks ago to include a claim for such other relief as this Court found equitable, then I think we'd have a different situation, but the only relief requested in the documents filed including in the stipulated order which was filed is for injunctive relief and for fees pursuant to the declaration.
 My position is that clearly the declaration in this court —
 THE COURT: When you say just fees pursuant to the declaration, without any particular sections.
 MS. RUSSELL: Right, and until the motion for fees was filed I did not know what specific sections CT Page 5167 counsel was relying on.
THE COURT: Their prayer for relief has ended.
 MS. RUSSELL: Their prayer for relief also does not claim anything other than injunctive relief. This is a court of equity. Had counsel sought such other relief as the Court found equitable using that kind of language, this Court would have I believe jurisdiction to enter whatever fees and costs against my client it chose.
THE COURT: Are you saying —
 MS. RUSSELL: But it did not frame its prayer for the relief correctly, and therefore I think it is foreclosed from doing that.
 THE COURT: Are you saying that the language of the prayer relief which refers to — oh, we don't have the complaint.
MS. RUSSELL: I have it.
 THE COURT: I didn't call for the file I'm sorry to say.
MR. FLAHERTY: Good morning, Your Honor.
 THE COURT: Good morning. Have I got two things going at the same time?
 MR. FLAHERTY: No, Your Honor. Mr. Sinatro is from my office. I had to go up to Rockville, and he was going to handle this argument, and I was going to come as soon as —
THE COURT: Oh.
 MR. FLAHERTY: — I could, so if I may just take a seat.
THE COURT: Make yourself comfortable.
MR. SINATRO: Your Honor, may I show you the CT Page 5168 prayer for relief?
THE COURT: Yes, please.
 MR. SINATRO: Okay, I just circled the two both in the application and in the complaint that I think supports our position.
THE COURT: What are these — oh.
 MR. SINATRO: One of those is the amended complaint, and the other is the application, Your Honor.
THE COURT: Oh, okay.
Counselor.
 MS. RUSSELL: And my position in response, Your Honor — and this is what I had also shown the Court. That's my own copy.
THE COURT: All right.
 MS. RUSSELL: My position is that seven does not apply because the declaration does not provide for the collection of attorney's fees and costs in anything other than a collection or foreclosure action and that eight, the language of paragraph eight is requesting injunctive relief and not equitable relief, and I believe the language you have would have to have been equitable relief in order to afford this Court the jurisdiction to enter fees against my client.
 THE COURT: There was no effort to strike that request?
MS. RUSSELL: No, but it is not —
THE COURT: And — okay.
MS. RUSSELL: I'm sorry.
THE COURT: Go ahead. CT Page 5169
 MS. RUSSELL: I don't believe it is my responsibility to reform and to advise counsel on how it should frame —
THE COURT: It's a question the Court asked.
MS. RUSSELL: There was no motion to strike.
THE COURT: Okay.
MR. SINATRO: May I respond now, Your Honor?
THE COURT: Yes, please.
 MR. SINATRO: Okay. The issue of the pleadings is an interesting one. I'm not sure how else we could have pled it. We specifically asked for reasonable attorney's fees pursuant to the declaration and bylaws, We don't limit it to a section nor are we required to do so as far as I know, so I think that's entirely proper.
 Number eight — and this occurs in two different spots in both the application and the complaint. Number eight: does say other injunctive relief, but I wanted to remind the Court that by filing an application for injunctive relief we are invoking and conferring the equitable powers, of the Court on all of the parties there whether it asks for it or not.
 So, whether the prayer for relief has that in there, the rule is, you know, an injunction proceeding which is what the stipulation resulted from is an equitable proceeding, and the Court can proceed pursuant to its general powers of equity.
 The issue of the bylaws, I mean, part of the reason I talked about the purpose of the bylaws and the two sections specifically is that I don't think there is any claim or there can be any claim that as a whole this is exactly what the bylaws and declarations were designed to address, these types of expenses that aren't budgeted for and that prevent — you know, that are really the reason why the CT Page 5170 association is not a profit-making entity. It allows them to recoup these types of damages. You know, the fact that the sections weren't specifically pled I don't think has any bearing on it.
 The other thing I just wanted to point out is that 19.3 is what counsel really focused on. What I was focusing on was 19.2 which doesn't talk anything about the liens, only the assessments against that individual unit owners. Now, there is an argument that can be made that following from that they have to make an assessment and create a lien, but it doesn't say that.
 So, if again I go back to the sections as a whole, I'm even putting aside section 7.5 which I think really gives us the authority and the way we're pled here, but as a whole there's no question that they don't have the authority and that this Court doesn't have the authority to do this pursuant to what's been pled and what's been stipulated to.
THE COURT: Further, counselor?
 MS. RUSSELL: Only that as I said in my brief you can't go beyond or maybe I didn't say it in my brief, maybe it was what I was planning for today, you can't go beyond what has been presented to the Court. The stipulation does not contain any acknowledgement that there was misconduct. That's number one.
 Number two, you can't go beyond the documents on which counsel relies. The specific sections which counsel relies on in the motion for attorney's fees all wind up in 19.3. 7.5 and 19.2 talk about — define different types of expenditures which may result from misconduct by a unit owner, and they are definitional in nature. 19.3 is the vehicle by which these expenditures may be recouped.
 Clearly if there were expenditures such as damage caused to other unit owners, damage caused to other common elements that were properly assessed, there was no pleading that such damage had occurred, CT Page 5171 it was a dollar figure and it was assessed against my client. That's not anywhere in the application or in the verified complaint.
 Had those damages and those costs been assessed against my client, they are recoverable only pursuant to the proceeding laid out in 19.3, so 7.5 and 19.2 are definitional. 19.3 is the procedural vehicle by which those expenses can be recovered, and that has not been met here, and we cannot and I think this Court cannot go beyond what has been pled and what the documents say.
 The purpose of the declaration is what it is, but if it is not — if the procedural requirements laid out in that declaration have not been met by this action and if other procedural requirements such as a request for such other relief as the Court may deem equitable have not been asked for, then this Court lacks the authority to impose fees on my client because it has not been approached appropriately either through the declaration or through the appropriate pleading.
 Finally, the only other comment I would make, Your Honor, and I believe, it is in my objection, is that if this Court nonetheless should find it appropriate to assess some of plaintiff's attorney's fees and costs against my client, we have some major objections to the request for attorney's fees since they include interoffice conferences between various attorneys within O'Connell, Flaherty and Attmore.
 I feel that — we feel it's inappropriate if this Court does assess fees against my client for my client to be paying for interoffice conferences, and there is no indication on the bill submitted with plaintiff's motion of the amount of time involved in these interoffice conferences. That would be the last comment that I would have to make.
 MR. SINATRO: Two very short ones, Your Honor. I don't agree at all that 7.5 is a definition section. It goes way beyond that. It actually gives them the ability to assess expenses and to make the CT Page 5172 unit owner liable for them.
 Secondly, on the attorney's fees issue, I mean, O'Connell, Flaherty, and Attmore didn't do anything other than what they thought they had to do to properly represent these people. It was a complex case. You know, we put the time in. Again it was — the ball was in Mr. Caputo's court to avoid that problem had he properly dealt with the association, and he didn't, so that's — any allegation that that time that was spent was unwarranted or improper just is not true.
 THE COURT: Going back to the original — the proposition as to whether or not —
MS. RUSSELL: I'm sorry?
 THE COURT: Going back to the question of whether or not we should even allow fees, I really do not read that declaration in as limited a fashion. As I said earlier, you have a situation where it doesn't involve let's say delinquent payment of monthly charges, and it doesn't involve a foreclosure action which obviously has to take place with fixed sums before they can then go ahead and try to collect.
 Here you have a situation where they could not allow the activity to continue without doing something to see that the activity conformed to the configuration for the development, so to say that they had to wait until it was done, assess the damages and then go through the procedure of levying and then trying to collect, I could not see, I could not see the declaration placing that kind of responsibility on the association.
 I think the language as I reviewed it is broad enough to allow the association to involve itself in the manner in which it did to initially have tried on its own to get conformity; failing that, the action. The action sought the relief.
By stipulation the parties agreed they would do CT Page 5173 certain things and take care of other things so the end result would be that when this unit was completed and the grounds laid out that it would fit, but the association had to go to court to get that, and that gives them a basis for asking for attorney fees which I'm going to allow. There are also the expert fees. I will hear argument now on the expenses themselves.
 Now, in terms of — and I was aware that one of the problems you had was that we did — as I went through the submittals that there were a number of conferences with associates, and actually when I looked at the initials, you had at times two counsel. You had it at times let's say probably maybe not a lesser associate or what do you call them, aides?
MS. RUSSELL: Paralegal.
MR. SINATRO: Paralegals, Your Honor.
MR. FLAHERTY: Paralegals.
 THE COURT: There is some time that you have to spend, of course, getting the paralegal or if the paralegal has questions, that's one area I would see combined conferencing just to get the person straight in terms of what has to be done. Then they go off and do what they've been directed to do.
 As between the partners themselves when they meet, I think that I'd like to hear a bit more as to why that would be necessary in terms of billing for a joint conference rather than for one. Now, who carried primary responsibility for the case?
MR. FLAHERTY: I did, Your Honor.
THE COURT: Okay.
MR. FLAHERTY: I did, and
 THE COURT: You don't mind I hear now from — usually in an argument —
CT Page 5174
 MS. RUSSELL: Perhaps he ought to identify himself for the record, Your Honor.
THE COURT: Oh, please.
 MR. FLAHERTY: For the record, Your Honor, Jim Flaherty, Your Honor, partner of Steve Sinatro.
THE COURT: Thank You.
 MR. FLAHERTY: And I was primarily responsible with one other partner who worked on the file, Paul Aparo. Paul Aparo represents the Upper Folly Farm, and his involvement was primarily the initial meeting with the client and some initial legwork, and then I took over working on the file.
 You'll see a Kathryn D. Flori is a paralegal; Kevin Green is an associate, and Mary K. Jinks is a paralegal, so really there was one partner working primarily on the file and one associate and two paralegals.
 What we always try to do is have the least billing — the lowest billing entity do any work that that entity can possibly do for efficiency, and we are also completely computerized and networked, and we are cognizant of the fact that legal fees are high, and we try to deliver the best legal services at the lowest possible dollar, and we market that. That's one of our points of difference. We try very hard.
 Kevin Green did most of the legwork. I did most of the trial work or trial preparation work, and we were fully prepared to go. As Your Honor will recall, we had our experts. I interviewed them. I met with them at the site.
 The conference time would be I would say a hundred percent of the time my directing Kevin to, Kevin Green, or one of the two paralegals to take action, check this point, do this research, talk to this witness, and that's really how we worked.
CT Page 5175
 We always in every file we set up, every trial file we set up a litigation team, partner in charge, associate and paralegal or two. This was very complicated. There was a lot of documents that needed to be pulled together, so —
 THE COURT: I will agree that this is not the usual kind of condominium association case that's brought.
MR. FLAHERTY: Yes, Your Honor.
 THE COURT: It is somewhat unique in that respect. There aren't many that are still in the developmental stage where you have the opportunity to buy lots and build.
MR. FLAHERTY: Yes.
 THE COURT: So that that certainly the Court recognizes.
 MR. FLAHERTY: And Kevin Green did a good bit of title work, and then we had to review that, and it was a complicated chain of title because of the number of entities that had passed through, but I assure you and I assure Mr. Caputo that the office conferences weren't us sitting around just chewing the fat about the file. None of us have the time to do that.
 I mean, this really is a fairly high pressure environment, and I tried to do as little work as possible on the file because I really didn't have the time to, but I was required to. We tried to — before we appeared before Your Honor we tried to work this out and were unable to, so I was required to prepare one hundred percent for trial.
 We spent the Saturday afternoon before the hearing at the site with my experts and then meetings before the viewing and after the viewing, and I was the only person from my office who attended that. There really wasn't — I could say to Your Honor with confidence that there was no duplication of effort on CT Page 5176 this file.
 THE COURT: And we certainly know that there was a date for trial —
MR. FLAHERTY: Yes.
 THE COURT: — because this Court was ready to hear it —
MR. FLAHERTY: Absolutely.
 THE COURT: — but for the fact that the parties had worked out an agreement.
 MR. FLAHERTY: Yes, we anticipated a full-blown hearing.
THE COURT: Well, your witnesses were there.
MR. FLAHERTY: Four or five witnesses, yes.
THE COURT: And all the parties were there.
MR. FLAHERTY: Yes.
MS. RUSSELL: If I may, Your Honor.
 THE COURT: Let's get into the area of the experts that you used —
MR. FLAHERTY: Yes.
THE COURT: — or you were going to use.
MR. FLAHERTY: Yes.
MS. RUSSELL: If I may, Your Honor.
THE COURT: Yes.
 MS. RUSSELL: I have no — I'm not making any challenge to the experts' costs.
THE COURT: Okay, so basically — CT Page 5177
 MS. RUSSELL: We had to do our own, and that is not an issue at all.
THE COURT: All right.
 MS. RUSSELL: So, if I can save the Court time in that respect, that's not an issue.
THE COURT: Fine.
 MS. RUSSELL: But on the issue of attorney's fees, we consider that it's a cost of doing business that I should sit down with the senior partner in my firm and say this is what's happening, this is what I think, this is what I don't know what to do about, would you please give me guidance or let me pick your brain or the two of us sitting with our client who gets charged only once at my rate.
 In other words, the time spent by more than one person on a given entry is something that we do not bill our client. We don't feel it's appropriate that our client should have to pick up the cost to the conservancy of conferences between or memos from one attorney within O'Connell, Flaherty and Attmore to another or conferences between an attorney at O'Connell, Flaherty and Attmore and a paralegal, and that is time that appears in here, although it cannot be separated out.
 In my motion — excuse me, in my objection, Your Honor, I gave the Court dates on which these types of entries appear, and that's what we object to in a concrete sense.
 I think my motion also makes it very clear that my client's position is that he has always done what he could do and has always intended to and to the best of his ability complied with the regulations, and therefore his position has been outside of the legal issue that I raised to the Court that he is not responsible for this and should not be assessed this.
MR. FLAHERTY: Well, I think Your Honor has CT Page 5178 already determined that issue.
THE COURT: Yes, that is behind us.
MR. FLAHERTY: Yes.
 THE COURT: Now, what is the differential between your computation and their computation?
 MS. RUSSELL: I do not know what the difference would be unless — if the Court would look at the affidavit of attorney's fees provided by Mr. Flaherty, on February 3rd, 1998, there's an entry. The initials are JTF, and it says Conference with Attorney Aparo.
THE COURT: Hold on, let me just find it.
MS. RUSSELL: I'm sorry, Your Honor.
 THE COURT: Okay. Now, what date are we looking at?
 MS. RUSSELL: February 3rd conference with Attorney Aparo with JTF.
THE COURT: That's you.
MR. FLAHERTY: That's me.
MS. RUSSELL: Right. Further down February 4th —
 THE COURT: Well, hold on. You're billing for yourself only.
 MR. FLAHERTY: Correct, and I'd like to point out on that Attorney Aparo had spent several hours meeting with the client, but you don't see any independent entries by Attorney Aparo for his time having met with the client.
 Basically he was then downloading to me in a very brief condensed fashion what it had taken him a couple of hours in terms of information to receive from the client, so that was — I think that was a CT Page 5179 very efficient use of time.
 The client — and I'd like to point out that my normal billing rate is 225 dollars an hour and so is Paul Aparo's, and in this file we're at 185 dollars an hour, and it's an interesting — Attorney Russell raises an interesting issue in every case, and that is I could do all 56 hours of the work at 185 dollars an hour or I could do 20 hours of the work at 185 dollars an hour and direct Kevin Green at 140 dollars an hour to do the legwork.
 So, to the extent that I'm saving the client a good deal of money by spending 15 minutes or a half an hour directing Kevin Green, I would say that's an efficient or a service to the client and an efficiency enjoyed by the client rather than something for which we should be penalized. We're saving him 40 dollars an hour by my directing him to do work that otherwise I'd have to do.
 THE COURT: I've always approached the documentation of attorney fees with that particular perspective, that the extent to which you're able to use the lesser person to carry on, of course, it saves the client money, and you get into kind of a — it's really a mode of operation. You operate in one way; they operate in another way.
 MS. RUSSELL: We do not charge our clients for any interoffice conferencing between me and —
 THE COURT: So, they would always be charged the partner rate.
 MS. RUSSELL: They're not charged paralegal time at all, so if I draft something or dictate something, whatever time it takes my secretary to produce it, have me revise it and put it into final is not something our client is charged for. Whatever time it takes me to review something with the principal of our firm and to have his input is not a charge that is ever made to the client.
THE COURT: Who's charged for that time? Is it CT Page 5180 the principal? What billing takes place?
 MS. RUSSELL: There is no billing. Interoffice conferencing between attorneys in my office or between attorney and paralegal in my office is not charged to anybody. It's no time. The only charge the client receives is when I'm actually researching or when I'm actually in court or when I'm actually on the phone arguing with Attorney Flaherty about whether we should settle this.
 THE COURT: When you're sitting with another person aren't you charging for your time?
 MS. RUSSELL: No, that is a cost of doing business. That is how our firm does that. When I'm sitting with my client I'm charging. When I'm on the phone on behalf of my client's interest, in this case with Attorney Flaherty or Attorney Green, that is a charge, but if I am reviewing a draft that my secretary has produced, that's no time. It doesn't appear.
THE COURT: That's your draft.
 MS. RUSSELL: My initial dictation would appear, but nothing after that appears. If I do research, it appears. If I discuss the results of my research with the principal of our firm, that is not charged. It doesn't appear anywhere.
 THE COURT: If your research is done by a paralegal —
 MS. RUSSELL: We don't do that. We don't have a paralegal do that.
 THE COURT: But if you did that, if you did have a paralegal who did the research, would you charge for the paralegal's research?
 MS. RUSSELL: I really can't answer that because the firm simply doesn't operate that way.
THE COURT: I would think you would charge, I CT Page 5181 would think you would charge.
 MS. RUSSELL: Since we don't charge for any paralegal time at all, perhaps we would not.
 THE COURT: Well, firms will differ the extent to which they use paralegals, and clearly if a paralegal is a part of the staffing and that paralegal has been used to work on a file, there's billing for that. I see it all the time.
 It's a matter of really what the attorney prefers. Some attorney's say I'll do the research. They're more comfortable with that, and that's fine. That's the way they work, but I certainly could not say that work done by paralegals or by lesser associates versus the partner would not be billed, and —
 MS. RUSSELL: I didn't say that, Your Honor. I'm objecting, and I thought I made it very clear —
 THE COURT: What you're talking about is when the two of them get together and talk about this case.
 MS. RUSSELL: Precisely, and whether it appears under Mr. Flaherty's billing rate or under Mr. Green's lesser rate or whether it appears under the rate of the paralegal with whom an attorney is corresponding, I don't think that that is something — a charge that should be assessed and that my client should have to pay for.
 THE COURT: One of the things that is most common, most common is the use of the senior attorney to direct say the associate who's going to carry the load, and that time is billed for; it's billed for, and the work that the association does is billed for.
 That's the way most, at least the firms that have come with their expenses, the ones that I have seen, and I've seen many, have done it, and it's not been considered a problem. I would be reluctant to impose a standard of one firm on another firm so long CT Page 5182 as this Court has seen as I have the billing here which is very common.
 This isn't an extreme bill. This is not really — in view of the nature of the litigation, it really is not an exorbitant bill. It's not a bill that I frankly don't consider reasonable under all the circumstances.
 The way they've worded it and the billing rates that have been imposed, quite frankly as I reviewed this, and I did spend time because I was aware of your objection taking the initials and looking and seeing the time, I would be hard-pressed to say it could have been done any cheaper than this.
 Part of it is the fact that it isn't the kind of litigation that really is very common. In time maybe, but we really have not had a need to get involved to this extent where something is going up and the people expect what it's going to be, and it's pretty dry and cut to a certain pattern. This is different.
 This is the kind of litigation that takes this kind of time, that it involves the kind of people that have been involved, and the fact that you do have — this is why I asked who was in charge and the extent to which there needed to be some involvement to guide and direct and for the others to take off and to do and to look out for the clients to ensure that work that can be done at a lesser rate was done at a lesser rate, but sometimes in order to do that you do have to have a certain amount of conferencing to accomplish that result, and I'm comfortable with that.
 MS. RUSSELL: Would you note my objection, Your Honor?
THE COURT: Yes, sure.
MS. RUSSELL: Thank you.
 THE COURT: All right, so the court is going to allow the fees that have been documented, and at this CT Page 5183 point let's see if there is — and there's again no objection to the expert fees that have been listed, and the Court would allow that.
 I'm just looking for a summary figure at the end which would be we all agree at the end or rather this is the total figure, the 24,881 dollars and 63 cents, which is what the Court grants by way of the fees. Now, if you take all of the filings and add them together, that would be the fee that we get.
MR. FLAHERTY: Thank you, Your Honor.
 MS. RUSSELL: For the record, my objection that there is no basis under the declaration for this award, and given the absence of a claim for such other equitable relief as the Court deems proper there is no basis in the pleadings for this award.
THE COURT: Noted for the record.
MS. RUSSELL: Thank you, Your Honor.
 MR. SINATRO: Your Honor, may I just ask one more matter, kind of a time frame on the payment of these fees.
 THE COURT: Oh, yes. What is the usual time that you kind of allow clients? Is it a 30-day period?
MR. FLAHERTY: Thirty days.
MR. SINATRO: Thirty days, Your Honor.
 THE COURT: Thirty-day period, is that a workable claim?
 MS. RUSSELL: Given the number and given the fact that my client is out of the country at this time and his business trip has been extended, I would ask for 60.
THE COURT: Any problem with that? CT Page 5184
 MR. FLAHERTY: Well, Your Honor, Mr. Caputo in his deposition represented that he was an extremely wealthy man with employing 500 people and in the process of taking his business public. He probably has that number in his pocket. I would say 30 days, and we've been waiting already 30 days, so I would say another 30 days would be more than reasonable for this fellow.
 THE COURT: You're not suggesting that there is any financial problem.
 MS. RUSSELL: I'm not aware of any, but he has taken his country — his company public, and he has been on continuous travel since the date of our hearing.
THE COURT: When do you expect him back?
 MS. RUSSELL: I don't know. I thought he would be back already. He called from Europe yesterday. He doesn't know when he's getting back. He's doing what he calls the dog and pony show trotting out the prospectus to a variety of present customers, prospective customers to see how he can sell it.
 He had expected to be back by this week. He is not back, yet he does not know when he will be back, and I'm only asking for 60 days because this will need his personal attention, and I don't know what his time frame is. I'm not aware of any personal financial problems. I'm only thinking in terms of his ability to meet all of the varying demands on his time once he gets back here.
 THE COURT: And you expect him back before the end of the month?
MS. RUSSELL: I would think so, but as I said —
THE COURT: Today is the —
MS. RUSSELL: Today is the 11th.
 THE COURT: The 11th. Why don't we say 45 days. That will give you the balance of the month —
CT Page 5185
MR. FLAHERTY: That's fine, Your Honor.
THE COURT: — and the month after.
MS. RUSSELL: Forty-five days from today.
 THE COURT: So, let's say on or before the first of — make it simple. We're in March now, on or before April 24th.
MR. FLAHERTY: Fine. Thank you, Your Honor.
MR. SINATRO: Thank you, Your Honor.
MR. FLAHERTY: Thank you very much, Your Honor.
THE COURT: All right.
(Whereupon, the Court took a recess.)
CERTIFICATION
I, Laura Muenchow, a Certified Court Reporter, do hereby certify that the within and foregoing is a true and accurate transcription of the stenographic notes taken in the matter of Upper Folly Farm Conservancy, Incorporated versus Edward Caputo and Larry Krison d/b/a Krison Homes heard on the 11th day of March 1998 before the Honorable Mary R. Hennessey, a judge of the Superior Court, held in the Hartford/New Britain Judicial District at Hartford, Connecticut.
 Laura Muenchow, Certified Court Reporter
Honorable Mary R. Hennessey, Judge